1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KIRK EDWARD CAMPBELL,                    No.  2:15-cv-01986  KJM GGH

12                    Petitioner,

13        v.                                  <u>FINDINGS AND RECOMMENDATIONS</u>

14   WARDEN DANIEL PARAMO,

15                    Respondent.

16

17

18                      INTRODUCTION AND SUMMARY

19          Petitioner was convicted on several illegal drug and gun charges in Placer County.

20   Because of petitioner's prior record, he was sentenced as a "Three Strikes" defendant, and

21   received a base term of 25 years to life imprisonment, along with concurrent and stayed sentences

22   of 25 years to life.  Proceeding through counsel, petitioner filed a petition for a writ of habeas

23   corpus pursuant to 28 U.S.C. § 2254 on September 20, 2015.  ECF No. 1.  Respondent filed an

24   Answer to that petition on February 11, 2016, and petitioner filed a Reply on July 14, 2016.

25          The petition here raises significant issues.  Petitioner asserts that after he invoked his

26   <u>Miranda</u> rights, the interrogating officer placed a picture before him depicting the contraband

27   seized from the car petitioner was driving, and later testified to petitioner's reaction to the

28
                                            1

picture.[1]  (Claim 2).  Next, despite the fact that petitioner's defense that the drugs found at the time of his arrest in the trunk of the car belonged to his passenger, the court refused to allow the passenger to testify that his initial denials of this fact to the on-the-scene police officers were occasioned either by his being an informant for the police or by his fear that his (the passenger's) pending drug prosecution would have placed him in serious legal jeopardy.  (Claim 3).  Third, petitioner contends that the trial court's allowance of a police officer's testimony about a recorded jail phone call despite the fact that the recording had been destroyed was error.  (Claim 4). Fourth, petitioner contends that his attorney's absence from the trial judge's mid-deliberations answer of the jury's requests raised structural error concerns, or at the very least, substantial and injurious error.  Claims of ineffective assistance of counsel (Claim 5) were made to all the preceding errors on the basis of failure to object.  Finally, petitioner believes that the errors set forth above, if not individually sufficiently prejudicial to vacate his conviction, become so when viewed in a cumulative sense.  (Claim 6).

For the reasons given herein, the undersigned recommends that the petition be granted in part (Counts 2-10 of the state criminal judgment) based on cumulative prejudice (Claim 6 herein), and denied in all other respects, including a total denial of the petition as it relates to Count 1.

FACTUAL BACKGROUND

The facts, as depicted in the Third District Court of Appeal's unpublished decision denying petitioner's appeal (on an issue not germane to this habeas petition), People v. Campbell, 2014 Cal.App.Unpub. LEXIS 3262 (May 7, 2014), are used here as they accurately describe the circumstances of petitioner's arrest.

> Placer County Deputy Sheriff Eric Bakulich was patrolling Douglas Boulevard in Roseville at 1:00 a.m. in March 2010, when he saw a man driving a Ford Escort "slightly over the speed limit."  The deputy estimated that the Escort was going 50 miles per hour in a 45 mile-per-hour zone by driving behind the Escort and looking at his patrol car's calibrated speedometer.  The deputy ran a "DMV check" of the Escort's license plate and found out the name of the registered owner of the

---

[1]  The undersigned has changed the order of claim presentation to make it chronological with the events claimed as error.

2

Escort, who was male. The deputy then ran a records check of the registered owner and saw that his driver's license had expired.

The deputy stopped the Escort based on his assessment that the driver was speeding and driving on an expired license.

Fn. 1:  1 In his police report, Deputy Bakulich wrote that defendant had violated Vehicle Code section 22350, which prohibits a person from "driv[ing] a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for weather, visibility, the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property."

Defendant was the driver. Deputy Bakulich ran a records check on defendant and learned he was "on searchable probation out of Sacramento County" and that defendant was the son of the registered owner of the Escort. He then asked defendant if there was anything illegal in the car, and defendant said there was not. The deputy "asked if he had any problems with us looking through the vehicle."

Fn. 2 Two other deputies came to the scene within five minutes of the initial traffic stop.

Defendant "told [the deputy] no." The resulting search uncovered a loaded firearm in a backpack in the trunk. Defendant was arrested for being a felon in possession of a firearm.

The Escort was towed and impounded. Citrus Heights Police Officer Daniel Buckenmeyer went to the tow yard to further search the Escort. Before searching the Escort, the officer learned that defendant was on probation from Sacramento County until 2014 and he was "subject to search and seizure" as a term of probation. During the search, the officer found "contraband." [the drugs at issue in this trial]

People v. Campbell, 2014 WL 1813441 *1 (Cal. App. 2014)

From this opinion it is clear that the only issues raised on appeal related to the the legality of petitioner's arrest and the subsequent search of his car.

The California Supreme Court denied petitioner's petition for review without comment on July 15, 2014.  ECF No. 1-2 at 17.  Petitioner filed a habeas corpus petition with the California

3

Supreme Court on June 11/2/15, which was also denied without comment on September 16, 2015. Id. at 89. The issues raised herein were first raised in the state habeas corpus petition.

LEGAL STANDARD

*AEDPA Standards*

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir.2013) citing Greene v. Fisher, 565 U.S. 34, 39 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir.2011) *citing* Williams v. Taylor, 529 U.S. 362, 405-406 (2000). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) *citing* Parker v. Matthews, 587 U.S. 37, ___, 132 S.Ct. 2148, 2155 (2012). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts

of the prisoner's case. <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003); <u>Williams</u>, 529 U.S. at 413; <u>Chia v. Cambra</u>, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 412. <u>See also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Lockyer</u>, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.'" "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Stanley</u>, 633 F.3d at 859; <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. <u>Edwards v. Lamarque</u>, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" <u>Harrington</u>, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." <u>Id.</u> at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." <u>Id.</u> at 99-100. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a "federal habeas court must presume

5

(subject to rebuttal) that the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir.2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir.2003).

The state court need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at its decision. Early v. Packer, 537 U.S. 3, 8 (2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir.2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." Harrington, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." Id. at 102. "'Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. at 101 *quoting* Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims

already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102, *citing* Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir.2013) *quoting* Harrington, 562 U.S. at 98

Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. at 64. Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir.2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412; see also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'" "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, supra, 562 U.S. at 101 *quoting* Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir.2007) (en banc). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 292 (2013).

With these principles in mind, the undersigned turns to the merits of the pending petition.[2]

DISCUSSION

*A.    Ground 2 of the Petition – Petitioner's Miranda Rights were Violated*

As Miranda itself makes clear, once an accused person "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Miranda v. Arizona, 384 U.S. 436, 444-445 (1966). Moreover, when a person in custody unambiguously indicates that he desires to remain silent, the questioning must cease. Id; Michigan v. Mosley, 423 U.S. 96 (1975). As shown below, the prosecutor agrees that at the time

---

[2]  Again, the undersigned discusses the issues as they occurred chronologically.

Petitioner was approached by Officer Buckenmeyer and a photograph was shown to him, Petitioner had invoked is right to remain silent. The guarantee of <u>Miranda</u> is that the "right 'to remain silent' is inviolate unless and until the invoker "chooses to speak in the unfettered exercise of his own will.'" <u>Id.</u> at 460 "quoting <u>Malloy v. Hogan</u>, 378 U.S. 1, 8 (1964). In addition, <u>Miranda</u> recognizes that "[a]s a practical matter, the compulsion to speak in an isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." <u>Id.</u> at 461.

### 1. *Factual Background*

The assertion of a <u>Miranda</u> violation was not made at the state appellate level, and arose in the first instance in the petition for habeas corpus filed with the California Supreme Court. Since the Court issued only a memorandum denial of the petition, the record contains no court analysis of the facts and law regarding this issue. The undersigned has, therefore, independently reviewed the record as well as the briefs of the parties.

As respondent notes, the <u>Miranda</u> issue arose in an odd, if not bizzare, context. Rather than bringing the motion as a normal pretrial motion, including evidence of the <u>Miranda</u> invocation, the issue was raised during trial in a speaking motion as a given fact. Thus, the actual record of facts is sparse. The matter first came up before trial had started for the day.

> Mr. Weiner: I have a couple matters. There are no jurors in here, are there? in connection with Mr. – Officer Buckenmeyer's testimony, there comes a time where my client invokes – he does not want to talk about anything anymore after answering a couple of questions. Thereafter, the officer shows him a photograph that the officer took of the – the pouch and I think the contents of the pouch too, and then describes my client's face as getting red and – and showing some nonverbal physical manifestations.
>
> It's my position that that should be – should be kept out. I am going to object to it coming in. I think it's a Miranda violation. Even though it's not a spoken answer, I think it's a question, in effect, when he is showing him that. It's done to elicit a response from him. And even though it's a nonverbal response, it's a reaction that's gong to be subject to speculation as to whether it was surprise or an admission. I think it will be argued by the People that it's basically an admission. So that's – that's the one thing.

The Court:  Well, before we pass on that, let's – let's take that up just for a moment, find out – let me find out first from the People, is that something you intend to elicit?

Ms. Botwinik:  Yes.  Specifically, I was just going to ask the detective regarding the defendant's demeanor when he saw the photograph.

The Court:  Okay.  And so there is – it sounds like there is no verbal response.  That's agreed?

Ms. Botwinik:  Correct.

The Court:  And the Court understands the defense's position would be that you want to have the reaction excluded even though it's a nonverbal response, if it is.  But it's a percipient observation on the part of the officer that's being offered, right?

Mr. Weiner:  Right.  And I don't – his observations and speculation on his part, you know, depending on how he describes it, I think is subject to an objection based on speculation.

The Court:  I'm not going to rule on that right now.  Based on what I have heard, unless you have some authority that tells the Court it has to exclude a physical manifestation as observed by the officer, we don't have a verbal response or any type of a statement that I've heard so far.

Mr. Weiner:  That is the situation, your Honor, except that it comes right after a – basically an invocation, a refusal to communicate, and then it's shown to him immediately thereafter.  It appears at lease form the report that's what happens.

The Court:  Okay.  Well, I appreciate the heads-up.  Let's take it a question at a time.  And if there's an objection based on whatever the question actually turns out to be, I'll consider that.

RT 468:11-470:3.

It is clear from the detective's testimony that any <u>Miranda</u> violation came some time after questioning had commenced in the jail.  <u>See</u> RT 539 (petitioner had already admitted in response to a question that the car in question was his).  Nevertheless, the prosecutor never stated, or even hinted, that a Miranda invocation to remain silent had not been made prior to the presentation of the photograph.[3]  Indeed, the lack of any verbal questioning after the photograph "throw-down"

---

[3]  It is unclear whether the right to counsel was invoked, along with the right to remain silent, but

10

greatly suggests that the showing of the photograph and gauging reaction was occasioned because verbal questioning had to be cut off. Respondent does not really take issue with the fact of the invocation in the Answer, but implicitly concedes that it was made, and assumes that error occurred. Based on this record, the court will find that prior to the picture being presented to petitioner while he was in jail, he had made a <u>Miranda</u> rights invocation.

Although the text of the colloquy on the speaking motion is somewhat ambiguous, the court also finds that the speaking motion was denied on the <u>Miranda</u> basis on the grounds that a verbal response had not been made, but not at that time on the speculation basis. Defense counsel thought so as well because during the detective's testimony the speculation objection was renewed, but not a <u>Miranda</u> objection.[4]

At trial, the evidence of the photo and reaction to it was admitted:

"Q. Did you show him any photographs from your search of his vehicle?

A. [Officer Buckenmeyer] Yes.

Q. What type of photograph did you show him?

A. I showed him a picture of the black bag exposed inside of the left rear quarter panel section.

Q. Once you showed the defendant that photograph, did his demeanor change?

A. Yes.

Q. Can you describe that demeanor to us, please?

A. Umm, he got very red in the face and stared at me, just red in the face and stared at me, appeared to be upset, in my opinion."

RT 540.

This "admission" was not referenced in final argument by either the prosecution or the defense.

There can be no reasonable doubt among fair minded jurists that established Supreme

---

the undersigned will assume it was.
[4] To the extent a finding could be made that the judge did not make a <u>Miranda</u> ruling, counsel was obviously ineffective in the way he raised the motion, including not having easily available authority at his disposal, and then in not obtaining a definitive ruling. The legal discussion in the text would apply in either event.

1  Court authority would view the detective's action as a violation of <u>Miranda v. Arizona</u>, <u>supra</u>.

2  The Supreme Court in <u>Rhode Island v. Innes</u>, 446 U.S. 291, 300-301 (1980), held that after

3  <u>Miranda</u> rights have been asserted:

> We conclude that the Miranda safeguards come into play whenever a person in custody is subjected to either express  questioning *or its functional equivalent*. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.  The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. [footnotes omitted] [emphasis added]

10  As expressly held above, the "behavior" of the police in questioning does not have to be verbal,

11  nor does the response have to be verbal.  Rather *any* behavior which is designed to elicit a

12  response is violative of <u>Miranda</u>.  However that response is relayed is sufficient be it verbal or

13  non-verbal: <u>Innis</u>, <u>id</u>. at 301 and n.5 ("By 'incriminating response' we refer to *any response…that*

14  *the prosecution may seek to introduce at trial*." (emphasis in original and added); <u>see</u>

15  <u>Shedelbower v. Estelle</u>, 885 F.2d 570, 573 (9th Cir. 1989); <u>United States v. Hanson</u>, 2012 WL

16  234131 *7 (D. Ak. 2012).  Obviously, the reaction of petitioner to the detective's "throw-down"

17  had no relevance at all unless construed as an "inculpatory response."

18      Respondent assumes the constitutional error and focuses on prejudice.  <u>Arizona v.</u>

19  <u>Fulminate</u>, 499 U.S. 279 (1991).  That prejudice which must be found to vacate a habeas petition

20  for non-structural errors is prejudice which is substantial and injurious to the validity of the

21  outcome of the trial.  <u>Fry v. Pliler</u>, 551 U.S. 112 (2007), referenced as the <u>Brecht</u> [<u>v. Abrahamson</u>,

22  507 U.S. 619 (1993)] standard.

23      Again, keeping in mind the AEDPA standards and the necessity of finding

24  unreasonableness in the state court decision, there is no doubt that petitioner was prejudiced by

25  his "admission," with respect to the drug counts.[5]  The photograph of the black bag shown to

26  petitioner depicted the black bag which had been taken from a "hidden compartment" in the

---

[5]  However, the <u>Miranda</u> violation has nothing to do with discovery of the gun—a discovery made at the scene of the arrest.

trunk, and which contained methamphetamine, heroin, prescription pills and drug dealing paraphernalia. RT 504- 520. Petitioner's "red face," "upset" reaction was most likely interpreted as an admission that the contraband was his. It was as effective as a verbal admission that "yes, the drugs are mine." That is why the prosecution introduced it.

Moreover, the Supreme Court has characterized confessions to be "like no other evidence" which has a "profound impact" on the trier of fact. <u>Arizona v. Fulminante</u>, 499 U.S. at 296. And, there is "*no distinction* between full confessions and admissions in whole or in part of an offense." <u>Miranda</u>, 389 U.S. at 477 (emphasis added).

However, as pointed out by respondent, there was plenty of other evidence from which ownership of the contraband could be inferred. The undersigned quotes from respondent's brief:

> The black bag contained a scale with methamphetamine residue and different packaged quantities of methamphetamine, heroin, concentrated cannabis, oxycodone, diazepam, hydrocodone, lorazepam, carisoprodol, clonazepam, and butanediol. (Lod. Doc. 12 at 505-06, 604-23.) There was in excess of 100 prescription and controlled prescribed CNS stimulants, depressants, and narcotic analgesics in different containers and packaging. (Lod. Doc. 12 at 506.) Petitioner admitted that the Escort belonged to him. (Lod. Doc. 12 at 539.) In a search three days later of the finished garage where Petitioner lived, officers found VitaBlend, which is a methamphetamine cutting agent, and packaging materials for methamphetamine, heroin, and oxycodone tablets. (Lod. Doc. 12 at 541, 551-53.) The packaging materials were on shelves with a sign reading "'Kirk's don't touch.'" (Lod. Doc. 12 at 543.) Petitioner also made a phone call from jail in which he said that "they found everything" in his car. (Lod. Doc. 12 at 547.) The woman on the call said, "'Well, they only found the gun; right?'" (Lod. Doc. 12 at 548.) Petitioner's response was, "'No . . . . They found everything.'" (Lod. Doc. 12 at 548.) Petitioner said something to the effect "'They were waiting for me to f*ck up.'" [6]

Answer at 12.

The undersigned adds to this the fact that the prosecution did not reference the <u>Miranda</u> admission at all in final argument. Therefore, there was no emphasis on the error.

Ultimately, on balance, the admission, although prejudicial when viewed in isolation, did

---

[6] The phone conversation is the subject of another claim; however, for assessing prejudice for this discrete <u>Miranda</u> claim, the undersigned will assume its validity. Whether that assumption continues for a cumulative prejudice analysis is another matter.

not change the weight of the evidence to a point where the outcome was substantially affected by the Miranda error; this claim should therefore be denied.  More importantly, it cannot be said that reasonable jurists could not come to this same conclusion as did the California Supreme Court (assuming its silent denial reasoning made a similar determination).

B.      *Ground 3 of the Petition- Exclusion of Evidence That Tindell Had a Pending Drug Charge*

The passenger in petitioner's car (Tindell) testified at trial that the drugs in the bag were his, not petitioner's RT 685, 688-690.  Petitioner most recently advances as a primary argument that Tindell made no such admission on the night of the police stop, or otherwise up through trial, ostensibly and inferentially because Tindell had a pending drug charge for which he anticipated repercussions in a pending criminal proceeding if he admitted to possession of the drugs.  However, the trial court excluded such evidence, on whatever theory, as not being probative enough in light of its potentially prejudicial value.

The theory most strongly advanced by petitioner's counsel before the trial judge for admission of the pending charge evidence had nothing to do with Tindell's "fear of criminal repurcussions" state of mind about possessing the drugs, i.e., Tindell's pending charges demonstrated that his quick release from jail indicated that he was an informant for the police department involved in petitioner's case.  RT 675.  Only afterwards, when it appeared that the "informant" angle was indeed a speculative leap based on Tindell's release from jail, as an afterthought, did defense counsel proffer that the evidence was pertinent to show Tindell's state of mind as being fearful of repercussions in his pending case, although the connection between the pending charges and Tindell's state of mind prior to petitioner's trial was not explicitly asserted to the trial judge.  RT 676.  Nor has it been explicitly asserted by Petitioner in the Petition or Reply that it was Tindell's fear of repercussions in his own case if he admitted ownership of the drugs at the arrest scene.  Rather, the argument is only made that Tindell's drug history pointed to the fact that he possessed the drugs.  Perhaps, Tindell's alleged fearful state of mind can be inferred as an argument herein from the drug possession angle, but one wonders why the connection was not made strongly.

Respondent first argues that petitioner has set forth no foundation to show that Tindell indeed had a pending drug charge. But in the Reply, petitioner points out that Tindell testified that he had been "taken to jail" on account of criminal charges pending against him, RT 674, which counsel later stated were charges for drug possession. RT 675. As far as argument in this Petition is concerned, sufficient foundation for the claim exists in this respect.

Next, Respondent believes that evidence of Tindell's pending charges was speculative and irrelevant. Perhaps so, if the real theory of relevance was that Tindell's quick release from jail (a fact that *is* without stated foundation) indicated that he was an informant. Such an inferential leap is indeed speculative, and simply being a police informant goes no distance in establishing Tindell's possession of drugs in petitioner's car on the night in question.

The undersigned cannot agree, however, that an alleged fearful state of mind, fearful because continued release from jail pending resolution of his charges might be jeopardized by an on-the-spot admission, is irrelevant. Tindell testified at petitioner's trial that the drugs in question were his, and petitioner quite clearly needed to present a reason why petitioner's trial was the first time Tindell had publicly indicated that he was the culprit. This would be true whether Tindell's charges had been dropped prior to petitioner's trial or not.

The issue here is not an evidentiary issue per se, but is more properly classified as whether petitioner was denied the ability to present effective evidence of a defense.

"State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence). This latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense -- rights originating in the Sixth and Fourteenth Amendments. Holmes, 547 U.S. at 324. "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential

to mislead the jury." Id. at 325–26; see also Egelhoff, 518 U.S. at 42 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."). The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental." Egelhoff, 518 U.S. at 47 (internal quotations and citations omitted).

In deciding if the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir.2004); Drayden v. White, 232 F.3d 704, 711 (9th Cir.2000). The court must also give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006.

Arguments made at trial matter. Taking the last factor first, giving due weight to the state's evidentiary rules, the undersigned has a difficult time finding that the trial court's ruling was not AEDPA reasonable when the argument now pressed was barely mentioned as an afterthought before the trial judge. Indeed, the idea of Tindell being an informant because he was released early was speculative and of little value to the issues in the case. What did being an "informant" have directly to do with whether petitioner or Tindell possessed the drugs on the night in question—not much—at least it is unexplained here. Perhaps an informant might be concerned about losing his informant status if he were possessing drugs on the side, but the side-trial which would have to occur to determine Tindell's real status,-- whether he was fearful of losing such status, whether the state's interest in keeping informant status out of a public trial, and so forth -- simply needed more foundation beyond the mere fact he was released early after his arrest. Petitioner here presents no such foundation from Tindell, but again desires to rest on the speculative fact that his early release "proves" his informant status, if he still desires to demonstrate that predicate.

16

On the face of it, the undersigned has much more difficulty with the trial court's decision to exclude evidence of Tindell's criminal prosecution difficulties as a potential reason for late ownership admission; as stated above, prosecution or the potential deprivation of pretrial release on the other criminal matter is logically a reason why one might be concerned about on-the-spot-admission of possession such that he does not admit to possession of drugs right away. Moreover, the underlying predicate of Tindell's legal difficulties does not appear to be disputed in any fashion. Thus, factors 1, 3, 4 and 5 listed above appear to favor petitioner. However, trial counsel's shotgun explanations of relevancy-- maybe Tindell was an informant, but if you don't believe that, maybe Tindell was simply concerned about his pretrial or pre-proceeding release -- bespeaks an unreliability of the predicate evidence. It strains credulity to believe that competent counsel would have to guess about the reasons for Tindell's state of mind, when counsel was calling Tindell as a witness for the defense. That is, if Tindell had a reason for not immediately admitting ownership of the drugs, the throwing out of somewhat contradictory theories of why Tindell acted as he did makes the predicate evidence suspicious indeed. The trial judge had a right to doubt its reliability.

But in any event, even if the exclusion of the pending charges evidence would be considered error, no actionable prejudice can be demonstrated. The judge's decision not to allow evidence of the pending charges did not preclude counsel from directly asking Tindell if he was an informant and whether that status kept him from admitting evidence of drug ownership on the spot. He was not asked—so much for that theory. Indeed, counsel stated to the judge when beginning to adopt a counter argument for admission "[H]e may not be an informant." RT 676. When asked by counsel why he had not come forward prior to trial to admit the drug ownership, Tindell stated "I was just scared." RT 691. He did not proffer the reason why he "was just scared." On cross-examination the fact was brought out that petitioner's case had been pending for about two and one-half years, and Tindell had even appeared before in petitioner's case, but said nothing. RT 692. Tindell had spoken to petitioner on several occasions, yet there was no conversation testified to about "Tindell doing the right thing." In response to the question: "Do you feel threatened that you are giving this testimony for some particular reason?", Tindell stated:

"No, I feel---" RT 696-697. Finally, Tindell testified on re-direct that the reason he was coming forward and testifying for the first time that he owned the drugs in question was simply, "guilt," not having anything to do with being fearful in the past or present. RT 698. Moreover, petitioner filed nothing in the state courts on habeas corpus that would suggest the real reason why Tindell had not come forward, and of course, nothing has been filed in this action.

In view of the entirety of appropriate considerations, the undersigned cannot find the exclusion of Tindell's proffered reasoning for late admission to be AEDPA unreasonable or actionable.

*C. Ground 4 of the Petition--Evidentiary Error in Allowing Detective Buckenmeyer to Testify to the Recorded Jail Conversation*

As set forth in the Petition and Answer, Detective Buckenmeyer testified to a recorded jail conversation, which he testified he had reduced to a transcript as he heard it. This conversation recorded the admissions of petitioner which essentially inculpated him for possessing all the contraband in the car trunk. The jail recordation was apparently destroyed, and the transcript, although available, was not introduced into evidence. The testimony about the conversation is as follows:

The Witness: The content of the phone call was—it started with the female stating that they had gotten the car, she said out of hock, which to me meant out of the tow yard. And then said that the car had been—that it was dirty, that there were things all over, that it looks like most of the stuff was in the car.

And his response was: "I don't care."

And she continued to say she didn't know exactly what was in the car.

And he made statements of, "It doesn't matter. They found everything."

And she said, "Well, they only found the gun right? That's all you are being charged with is the gun?"

And he said, "No. I'm being charged—something along—."They found everything…. --.

Q. Did Mr. Campbell, on that recording, indicate that he had been informed that a bunch of shit had been found in the vehicle?

18

A. Yes.

Q. Did the defendant say anything after that regarding his position or his situation after being informed that the ---

A. Yes.

Q. –stuff had been found in the car?

A. Yes.

Q. What did he say?

A. He said something along the lines of, "They were waiting for me to fuck up." RT 547-548.

On cross-examination, defense counsel again brought up the jail conversation where the detective reiterated that petitioner knew "they [the searchers] found a bunch of shit in the trunk." Petitioner himself reiterated the substance of the recorded conversation, but indicated that when he said, "They were just waiting for me to fuck up," he "didn't mean it in that aspect." RT 728. He also testified that he did not use the words "They found my drugs in the trunk," [b]ecause they weren't mine." RT 729.

Unlike the admission in the <u>Miranda</u> claim, the district attorney did emphasize petitioner's admission here in final argument. RT 787.

There are several reasons why permitting Detective Buckenmeyer to testify to the jail conversation does not raise a meritorious claim in federal court. First and foremost, the testimony was not hearsay, or under state law, was hearsay permitted by the admissions exception. <u>See</u> Cal. Evidence Code sections 1220, 1230. Petitioner presents no legal argument that jail recordings are required before testimony about admissions made in the conversations recorded can be permitted. Indeed, the case law is replete with examples of jail informants testifying to a defendant's admissions, and of course, there are seldom any recordings.

Secondly, the Supreme Court has not held, to the undersigned's knowledge, that failure to adhere to a state's best evidence rules raises constitutional concerns. As set forth in the AEDPA standards, such a Supreme Court pronouncement is the *sine qua non* for federal habeas corpus cognizability. To the extent that petitioner argues that admission of evidence in violation of the

state's best evidence rule infringed his due process rights, such a claim is a non-starter in a habeas action governed by AEDPA except in the most egregious, prejudicial situations.  Estelle v. McGuire, 502 U.S. 62, 67-68 (9th Cir. 1991); Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (recognizing that the Supreme Court has not found a due process violation by the introduction of prejudicial evidence).  See also Greel v. Martel, 2012 WL 907215 (9th Cir. 2012); White v. Davey, 2016 WL 7404761 (E.D. Cal. 2016) *10; Marks v. Davis, 2016 WL 5395958 *14 (N.D. Cal. 2016);  Mermer v. McDowell, 2016 WL 5329263 (C.D. Cal. 2016).

Finally, petitioner appears to argue that the apparent destruction of the jail recordings themselves was a type of prosecutorial misconduct.  However:

> In *California v. Trombetta*, 467 U.S. 479, 489 (1984), the Supreme Court held that "the government violates the defendant's right to due process if the unavailable evidence possessed 'exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993) *quoting* Trombetta, at 489). The Court subsequently added a third requirement for establishing a due process violation in Arizona v. Youngblood, 488 U.S. 51, 57–58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), holding that the defendant must demonstrate that the government acted in bad faith in failing to preserve the potentially useful evidence.

United States v. Rodriguez, 2016 WL 3090791 *3 (E.D. Cal. 2016).

Even assuming that the absent tapes had some type of exculpatory value, it is clear that petitioner had a means, even outside himself, where the alleged misconduct could have been rectified.  There were two parties to the phone conversation and petitioner does not indicate why the other person on the in the phone conversation, the girlfriend, could not have been called to identify inaccuracies in the detective's testimony.  Moreover, as set forth above, petitioner essentially conceded to the accuracy of the detective's testimony, as best as he could remember, only disputing the meaning of a statement.

Finally, petitioner has travelled no distance in demonstrating, first in the state courts, that any alleged destruction was accompanied by bad faith.

This claim should be denied.

D. *Ground 1 of the Petition: Communication With the Jury Outside of Counsel's Presence*[7]

The United States Supreme Court has held that the Sixth Amendment guarantees assistance of counsel and has "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." United States v. Cronic, 466 U.S. 648, 659 n. 25 (1985). The question raised by this ground of the instant petition is whether communication between the court and the jury in connection with responses to jury questions is a "critical stage of the proceeding" entitling petitioner and his counsel to be present while those questions are considered and responded to by the court.

The factual premise for this ground arises from the fact that as the jury announced it had a verdict, but before it entered the courtroom to deliver that verdict, the presiding judge made the following statement:

> We're on the record outside the presence of the jury on People v. Campbell. Counsel are present. Defendant, Mr. Campbell is present. A few preliminary matters. The first is the Court understands there's a verdict. However, I just wanted to capture on the record that there was – there were several requests for information from the jury this morning.
>
> The Court permitted readback of requested testimony. There was an additional request for a copy of the police report which the court refused. The jury was so informed. And there was a final question which the Court met with counsel in chambers and provided counsel an opportunity to be heard on and a chance to read the Court's proposed response to the jury question before it was given to the jury. And I believe both counsel concurred that it was an appropriate response.

Lodged Document ["Lod. Doc"] No. 13, ECF 17, 822:16-823:2. Counsel agreed that they had concurred in the response to the last mentioned item. Id. at 823:2-5. Petitioner claims that two of the jury inquiries that he claims his counsel was not allowed to consider before the judge responded to the jury violated his right to be present, in person or through counsel, when the

---

[7] Petitioner does not raise as a claim his alleged absence from the jury communications. This is not to say, however, that such means petitioner was present at the communications.

responses were formulated.[8]  Those two questions and the responses are as follows:

    1.    "Buckenmeyers [sic] transcript of jail phone call between Defendant and girlfriend – the portion that was discussed in court," to which the court responded "[t]he requested    item is not in evidence and is not available;" ECF 1-2 (CT) at 322; and

    2.    "[T]ranscript of Rodney Tindell's testimony starting when he claims the bag of drugs is his – transcript of Rodney Tindell's cross-examination by prosecutor."  Id. at 325.

Petitioner argues that in response to question number 1. the court, not having such a phone call transcript, unilaterally ordered a readback of the testimony of Officer Buckenmeyer as he addressed the issue of the jail phone call from the witness stand, and that this action deprived his counsel of an opportunity to argue that the jury should only have been advised that the transcript referred to by the Officer was not in evidence and as a result could not be provided.  The failure to even consider this approach, according to petitioner, suggested to the jury that the judge was adopting Officer Buckenmeyer's testimony as credible.  With regard to the second question, petitioner argues that counsel should have been afforded the opportunity to argue that any readback of Tinsdell's testimony should be limited to the specific issues raised by the jury instead of being read back in full thus reintroducing damaging evidence as to which they did not inquire.

Respondent, conversely, argues that petitioner has provided no evidence that his counsel was not present for consideration of the jury questions insofar as he provided no declaration or affidavit from trial counsel so stating.

As discussed at oral argument, Respondent arguably does have a point.  It seems odd that petitioner would not put to rest any issue about who was present, or not present, and trial counsel seemingly would have been willing to do this in a declaration filed initially in state court proceedings.  Petitioner's counsel suggested nothing that would indicate he could not have done this, and an adverse inference could be drawn from the failure to produce evidence within counsel's power to produce.

However, notwithstanding the above failure, it is difficult to conclude from the judge's

---

[8]  There was also a third request to view the gun which had been submitted into evidence.  The judge permitted this in the presence of a police official.  Petitioner does not claim that the gun viewing permission was actionable.

statement anything other than that when the judge expressly indicated that counsel was present for one response to the jury's question, his failure to indicate the same for the other responses means that counsel was not present. Why else would he expressly single out counsel's presence for one response, but not the others? To the undersigned, it seems clear from the statement of the court adverted to above that counsel was only included in assisting to formulate the response to the one jury question that required clarification of a legal premise.

The most telling factor of the record with regard to this issue of whether counsel participated in the formulation of the answers to jury questions appears in the format of the Clerk's (Erica Mejia's) record. On each day when trial was convened Ms. Mejia began her minutes with the statement that "all parties and defendant [are] present." Id. at CT 215, 215, 221, 227. On the day that the jury went into deliberations, however, the minutes began "Jury is present to begin deliberations." There is no mention of the parties and defendant being present. Once the jury notified the court it had reached a verdict, the Clerk's Minutes reflect, again, that "Court reconvenes with all parties, defendant and jury present." Id. at 230. Because of the regularity and consistency of Ms. Mejia's recordkeeping the court is convinced that the parties and defendant were not present in the courtroom, although they may have been in the courthouse or close at hand so they could be summoned to the courtroom, when juror questions were received by the court. In any event, after a thorough review of the record the court is convinced that counsel were not in the courtroom when the court received the questions from the jury.

Moreover, petitioner has testified in a verified petition that neither he nor his counsel were present for the first two inquiries set forth above. ECF No. 2. This counts as evidence—in fact, unrebutted evidence. The same statement was made in the state court petition. Lodged Document 14. To combat such evidence, respondent could have, as easily as petitioner could have produced trial counsel's declaration, obtained a declaration from the deputy district attorney detailing that both counsel were present for the jury inquiries at issue. No such declaration was produced in the state court, or here.

Therefore, the undersigned concludes that the only *evidence* before the state supreme court was petitioner's evidence. In state court practice, the court will assume the facts as set forth

in the petition are true unless it requests counter evidence from respondent. People v. Duvall, 9 Cal. 4th 464, 474-475 (1995). No such evidence was requested, and the state supreme court is presumed to have denied the petition as a matter of law. In light of the fact of petitioner's evidence, the only fair inference is that the state supreme court determined that no prejudice accrued as to the error.[9]

The undersigned will, therefore, find that counsel was excluded as petitioner claims with regard to the substitution of testimony from Officer Buckenmeyer in response to the jury's request for a transcript of the jail house conversation to which he testified from his memory, and the full read back of Tindell's testimony when the jury asked for a discrete portion. The undersigned will address the ramifications of defense counsel's exclusion from consideration of the responses unilaterally provided by the trial judge.

As discussed above, the United States Supreme Court has held a defendant and his counsel have the right to be present at every "critical stage" of the prosecution. United States v. Cronic, 466 U.S. 648, 659 (1984)("Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial."). Over the succeeding years, and even earlier than the Cronic decision, the Court has identified various trial stages it deems critical. See, e.g., U.S. v. Wade, 388 U.S. 218 (1967) (lineup after initiation of criminal charges is a 'critical stage' of the criminal proceedings); Iowa v. Tovar, 541 U.S. 77, 80 (2004) (plea hearing qualifies as a 'critical stage' citing White v. State of Md., 373 U.S. 59 (1963) (preliminary hearing); accord; Coleman v. Alabama, 399 U.S. 1 (1970) (custodial interrogation even before trial is a critical stage); accord; Kirby v. Illinois, 406 U.S. 682, 689 (1972) (post-indictment lineup is a 'critical stage'); Rothgery v. Gillespie County, Tex., 554 U.S. 191, 212 (2008)

---

[9] To the extent that respondent would argue that the state supreme court found that petitioner's counsel was present at all jury question proceedings, the undersigned would find that the fact finding process was AEDPA unreasonable. See Hurles v. Ryan, 752 F.3d 768, 790 (9th Cir. 2014); Holmes v. Johnson, 2016 WL 6803128 *4 (E.D. Cal. 2016). Based on the state petition and the record, the court could not reasonably find counsel to be present at all jury communications. At the very least, an order to show cause would have to have been issued to respondent.

(initiation of criminal proceeding appearance is a critical stage);  Gilbert v. California, 388 U.S. 263, 273 (1957) (post-indictment line-up is a critical stage).

Although none of these definitional cases mention the determination of jury questions, the Court discussed this issue as early as 1927 when, in Shields v. United States, 273 U.S. 583, 587-588 (1927) the court pronounced the following:

> The petitioner urges that the request joined in by court of counsel for the defendant and the assistant district attorney to hold the jury in deliberation until they should agree upon a verdict, made in chambers without the presence of the defendant, cannot be extended beyond its exact terms. It did not include any agreement that the court should receive a communication from the jury and answer it, without giving the defendant and his counsel an opportunity to be present in court to take such action as they might be advised, especially when the communication as to the result of the deliberations of the jury showed a marked difference in the views which the jury had as to the guilt of the various defendants. Counsel, in making it, necessarily assumed, as they had a right to, that any communication from the jury would be made in open court, and that they must necessarily be offered an opportunity to withdraw the request already preferred or to vary it. It is hardly fair to say that a general request to hold the jury for a verdict can be properly applied to such a situation as subsequently developed by the communication of the jury showing their views as to the various defendants.

The court then went on to note that the issue of representation at the time when jury instructions were being considered had arisen in a civil case, Filliippon v. Albion Vein Slate Co., 250 U.S. 76, 81 (1929), in which the Court had held that "[w]here a jury has retired to consider of their verdict, and supplementary instructions are required, either because asked for by the jury or for other reasons, they ought to be given either in the presence of counsel or after notice and an opportunity to be present; and written instructions ought not to be sent to the jury without notice to counsel and an opportunity to object."  The Shields Court then went on to hold that:

> If this be true in a civil case, a fortiori is it true in a criminal case?  The request made jointly by the counsel for the defendant and for the government to the court did not justify exception to the rule of orderly conduct of jury trial entitling the defendant, especially in a criminal case, to be present from the time the jury is impaneled until its discharge after rendering the verdict. We reverse the

judgment without reference to the other causes of error assigned.

Shields at 588-589.

Given this well-developed body of Supreme Court law over time it seems clear that failing to include defense counsel in a decision regarding how the trial court will respond to a potentially significant jury question is beyond doubt a "critical stage" of the trial process.

The Ninth Circuit has also so held. In Musladin v. Lamarque, 555 F.3d 830, 839 (9th Cir. 2009), the Circuit considered the very question at hand here, after noting that the precise question had not yet been addressed by the Court as it "has not provided a definitive list of Cronic "critical stages. The Cronic test to be applied is whether "the deprivation of counsel occurred during a stage holding 'significant consequences' for criminal defendants. Id. at 840. See also Fisher v. Roe, 263 F.3d 906, 915-917 (9th Cir. 2001), overruled on other grounds, Payton v. Woodford, 346 F.3d 1204 (9th Cir. 2003).

Musladin found that the judge's ex parte response to a jury communication to simply refer to the instructions already given would have been a Cronic structural error violation, i.e., deprivation of counsel at a critical stage, if it were deciding the question de novo. The Musladin court found that it was the formulation of a response which required counsel's presence and participation, even on superficially mundane jury requests. However, the Ninth Circuit also found that courts were inconsistent whether the response to the communication involving a mere "refer back" instruction was more than a de minimis intrusion on the right to have counsel present when the response was given ex parte by the judge. These courts determined that the significance of counsel's absence determined whether counsel was absent at a critical stage. More importantly, the Supreme Court had not expressly weighed in on whether absence at the formulation of a response to a jury inquiry was a critical stage.[10]

Unlike a situation where counsel is wholly absent for long periods during a trial, absence

---

[10] These courts would not find that counsel absence from the formulation of a response to *any* jury inquiry meant that counsel was absent at a "critical stage." The undersigned finds it difficult to disagree strongly with this assessment. For example, if the jury inquiry were simply, "what time is lunch," it is hard to find that counsel was absent at a "critical stage." Rather the jury inquiry must touch upon some potentially significant substantive matter.

from a jury communication by the judge does not necessarily involve structural error.  See

Fisher, 263 F. 3d at 917.  Although Fisher involved a defendants' absence from a jury testimony

readback, the same principle should apply to counsel absence.  See also the Eleventh Circuit case

of United States v. Roy,  855 F.3d 1133 (11th Cir. 2017) (en banc) in which the majority opinion

exhaustively discussed why counsel's short absence from the trial itself was not structural error.

In order not to unduly lengthen these Findings and Recommendations, the analysis therein is

adopted here without further explanation.

Thus, Musladin ultimately determined in its AEDPA context that it would have to find

counsel's absence to be prejudicial before the writ could be granted.  Musladin, 555 F.3d at 842-

843.  In habeas actions that prejudice is defined as actions which have a substantial and injurious

impact on the outcome of the case.  Fry v. Pliler, 551 U.S. 112 (2007) applying the test of Brecht

v. Abrahamson, 507 U.S. 619 (1993).

Taking the Tindall testimony first, the undersigned cannot find any meaningful prejudice

from having this testimony read back in its entirety.  Petitioner initially claims, without further

elucidation, that the readback was taken "out of context," and that counsel's presence may have

permitted him to argue for admission of only the "correct context."  The undersigned cannot find

that a readback of the direct testimony relating to Tindell's claim that the drugs were his

(previously argued as a very important aspect of the defense), along with the related cross-

examination, was "out of context."  Moreover, in his traverse, petitioner eschews any argument

on the alleged prejudice stemming from the Tindell readback.

The readback of the detective's testimony is another matter.  The jury in this case

understandably desired to compare the detective's testimony with a transcript created more or less

at the time of the phone call.  The prejudice accrued from the repetition of the detective's

testimony detailing another damaging admission by petitioner.  Indeed, if counsel had been

present, counsel almost certainly would have objected to any response other than that the

requested transcript did not  exist.  Supplementing this simple response with a readback of the

detective's testimony obviously could, and probably would, have been construed as a judicial

endorsement of the accuracy of the detective's testimony, i.e., we don't have the transcript, but

this readback will be just as good.  At the very least, the readback, which the jury did not request, emphasized the damaging admissions made.

In its harmless error analysis, Respondent addresses only the cases identifying readbacks and access to exhibits.  ECF 15 at 20.  They do not address at all the court's decision to provide a readback the jury had not asked for.  Respondent's approach ignores completely the fact that by providing the officer's testimony in lieu of a transcript, the court was implicitly endorsing the sufficiency of that testimony as establishing the content of the call, while the very fact that the jury asked for a transcript suggested that they were initially unwilling to rely solely on Detective Buckenmeyer's testimony.  In fact, there could be little other reason for asking for a transcript.  It makes clear that at least one juror was troubled either about the Officer's credibility, or the fact that both a tape of the conversation and a recording made by the Officer were not in the record for them to examine.

In Musladin, 555 F.3d at 839, the Ninth Circuit highlighted how the effect of communications between the court and the jury can affect deliberations.

> We first consider the significance of communications between the jury and the trial court during jury deliberations.  Jury deliberations are the apex of the criminal trial. All the evidence and arguments presented to the jury are processed and weighed at that time. Jurors are particularly susceptible to influence at this point, and any statements from the trial judge -- no matter how innocuous -- are likely to have some impact.

The Musladin court went on to quote the following language from Bollenback v. United States, 326 U.S. 607, 612 (1946):

> In a trial by jury, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. The influence of the trial judge on the jury is necessarily and properly of great weight, and jurors are ever watchful of the words that fall from him.  Particularly in a criminal trial, the judge's last word is apt to be the decisive word.

But the Brecht standard is not whether some harmful prejudice occurred, but whether that prejudice had a *substantial*, injurious effect on the outcome of the trial.  For the reasons set forth above in the Miranda violation section, and again, understanding the impact of admissions, the

undersigned cannot find that the readback of the detective's testimony *alone* warrants the grant of this habeas petition. It is important to note here that the readback did not concern otherwise inadmissible testimony, but testimony that this court has found was properly before the jury when given at trial. It would appear to be a much more significant in a prejudicial sense to emphasize inadmissible testimony than admissible testimony. Thus, although the readback was prejudicial and probably would have been averted if counsel had been present and voiced objection, the court cannot find actionable error, substantial and injurious prejudice, for this particular claim.

*E. Claim 5 of the Petition--Ineffective Assistance of Counsel*

Petitioner postulates that if the direct habeas claims are insufficient, counsel was constitutionally ineffective. This claim does not possess merit. First, the <u>Miranda</u> claim was found to have merit, although insufficient prejudice. Pasting ineffective assistance of counsel on top of this would add nothing.[11] The curtailment of evidence with respect to Tindall's testimony was determined to be insufficient on its own, and habeas counsel does not submit argument why trial counsel was ineffective (although the undersigned questioned why counsel did not have an evidentiary foundation for claiming that Tindall was an informant and/or concerned about his arrest status). In any event, for the same reason that the direct claim lacked prejudice, so would a claim with the ineffective assistance of counsel label.

Trial counsel did object during trial to permitting the detective's testimony regarding the jail conversation, but was overruled. Accordingly, he cannot be found to be ineffective. Even if appellate counsel ineffectiveness was thrown into the mix, the California Supreme Court with its silent denial denied the claim on its merits. In any event, the analysis pertinent to prejudice will be performed in the cumulative prejudice analysis.

Finally, petitioner has claimed that the trial judge engaged in an *ex parte* contact with the jury when it ordered a readback of Detective Buckenmeyer's testimony. Petitioner supplies no argument or evidence that his counsel should have anticipated such error; clairvoyance is not a

---

[11] But see footnote 4. To the extent that a reviewer of those decisions would find the record insufficient to find the <u>Miranda</u> violation, ineffective assistance of counsel would come to the front and be a very viable issue.

1 requirement for effective counsel.  Ineffective assistance of counsel again drops out of the
2 question.

3                                   CUMULATIVE PREJUDICE

4        The Ninth Circuit has held that the analysis of cumulative prejudice has been expressly
5 approved by the Supreme Court.  Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007).[12]  See also
6 Sears v. Barnes, 2014 WL 496773 *11 (E.D. Cal. 2014).[13]

7        The undersigned again brings to mind several factors regarding prejudice from the
8 introduction of admissions (or undue emphasis thereon)—that admissions have a powerful impact
9 on the trier of fact and are "like no other evidence."  In this case, the admission of guilt as to
10 ownership of the black bag containing drugs occasioned by the post-Miranda invocation showing
11 of the black bag contents picture with resultant red face et al. must have had a serious impact on
12 the jury.  It could be argued that other inferences of the displayed anger are possible, i.e., simple
13 irritation at being shown the picture after having invoked Miranda, anger at Tindall (or someone
14 else) for having placed the drugs in petitioner's car.  However, the prosecution did not introduce
15 this evidence thinking that equally plausible inferences could be reached—it believed that the jury
16 would draw the inference of guilt, the most probable inference. While the Miranda violation
17 prejudice was found not to require a vacating of convictions on its own, that is not to say that
18 there is no prejudice to add.

19        With respect to the re-reading of Detective Buckenmeyer's testimony, the undersigned is
20 well cognizant that he has already found that the testimony per se was permissible.  Thus, the
21 admission was properly before the jury.  But the fact of the matter is that the jury had some

22 ───────────────────
[12] "The Supreme Court has clearly established that the combined effect of multiple trial court
23 errors violates due process where it renders the resulting criminal trial fundamentally unfair."
[13] Barco v. Beard, 2014 WL 3845112 *41 (C.D. Cal. 2014), held that the cumulative prejudice
24 doctrine was a circuit only supported doctrine, and hence, was not effective in the AEDPA
context.  However, Barco did not cite to Parle.  Moreover, it is one thing to say, as has the
25 Supreme Court, that circuit authority in itself on a substantive area of the law is not controlling
for AEDPA purposes, see discussion of  Marshall v. Rodgers, 569 U.S. 58, 64 (2013) at page 7,
26 lines 8 to 13, supra, but it is quite another to find that Ninth Circuit authority which expressly
holds what the Supreme Court has established is not binding on the lower district court.  AEDPA
27 does not give every district court carte blanche to ignore Circuit authority on what the Supreme
Court has clearly established.
28

question about the Detective's testimony and wished to check it against the transcript—*at least* the transcript since they had heard that the original tape recording, the best evidence of what was said, was destroyed or otherwise could not be found." The jury was then improperly directed to the testimony as essentially being as good as the original evidence itself—an event that might well not have occurred if counsel had been present when the communication was made to the jury. It is not difficult to ferret out which is worse -- the improper introduction of an admission, or the undue emphasis of a admissible admission, the former is worse -- but for prejudice purposes an undue emphasis on an admission is prejudicial and is cumulative with the improper Miranda violation admission.

On the other hand, the court has recounted in the Miranda section the other strong evidence of petitioner's guilt, and will not repeat that here. Moreover, Tindall's last minute admission that the drugs were his was fairly weak as it was given to the jury. Further, the jury could have interpreted the phone call testimony as simply to what charges were pending, and not an admission of guilt. The strongest argument against cumulative prejudice is that possession of the weapon by a felon, for which petitioner received 25 years to life, was not referenced at all in the Miranda admission—only the drugs occasioned the red face.

Thus, if the only convictions at issue were the drugs for sale convictions, the undersigned would find that the prejudice from the two errors was sufficiently cumulative to warrant an entire grant of the habeas petition. But, as just mentioned, they (the convictions) are not. The undersigned cannot find that "cumulative" prejudice accumulated at all from the found Miranda violations vis-à-vis the gun charge—, i.e., the gun charge is not referenced in the Miranda violation, and hence, there is no error to accumulate with the potential Sixth Amendment error which did include reference to the found weapon.

Accordingly, the undersigned finds cumulative prejudice actionable for the drug counts, but not Count 1—the felon-in-possession count. The conviction on Count 1 should stand.

### POTENTIAL REMEDIES

The base term of 25 years to life was imposed for one of the drug charges. RT 868. The gun possession by a felon charge was given a concurrent 25 years to life punishment. RT 868-89.

Other drug charges, or as in Count 2, possession of a firearm in connection with drug possession for sale, were assessed concurrent or stayed 25 years to life terms.  The issue becomes whether there is any point to vacating the drug related convictions.

On objections, the parties shall brief the appropriate remedy for vacating all counts related to the drug charges (Counts 2-10), see RT 824-826.[14]  In the absence of such briefing, the undersigned will recommend that all counts related to the possession, transportation etc. of illegal drugs be vacated, and retrial of those counts be commenced.

CONCLUSION

In light of the foregoing IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus as it pertains to Count 1 of the state criminal judgment be DENIED in all respects.  The petition as it relates to Counts 2-10 of the state criminal judgment be GRANTED on the basis of cumulative prejudice accruing from the above discussed Miranda violation and the ex parte contact of the judge with the jurors.  If these Findings and Recommendations are adopted by the district judge, the final remedy will appear in that adoption order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 18, 2017

/s/ Gregory G. Hollows
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

---

[14]  The undersigned considers Count 2, possession of a firearm in connection with a drug offense to be a "drug offense" for the purpose of these Findings and Recommendations.